**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                        )
**ELECTRONIC PRIVACY INFORMATION CENTER** )
**1718 Connecticut Avenue, N.W.**                       )
**Suite 200**                                           )
**Washington, DC 20009,**                               )
                                                        )
     **Plaintiff,**                            )
                                                        )
     **v.**                                   )
                                                        )
**DEPARTMENT OF DEFENSE**                               )
**The Pentagon**                                        )
**Washington, DC 20301,**                               )
                                                        )
     **Defendant.**                            )
_____)

## COMPLAINT FOR INJUNCTIVE RELIEF

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)
    (2012), for injunctive and other appropriate relief, seeking the release of agency records
    requested by the Electronic Privacy Information Center ("EPIC") from the Defendant
    Department of Defense ("DOD").

2.  This lawsuit challenges the failure of DOD to disclose documents in response to EPIC's
    July 17, 2014, Freedom of Information Act request ("EPIC's FOIA Request"). EPIC's
    FOIA Request sought records regarding the Federal Voting Assistance Program
    ("FVAP"). EPIC has constructively exhausted its administrative remedies. EPIC asks the
    Court to order prompt disclosure of all responsive records.

**Jurisdiction and Venue**

3.  This Court has subject matter jurisdiction over this action and personal jurisdiction over

    the parties pursuant to 5 U.S.C. § 552(a)(4)(A)(vii), 5 U.S.C. §§ 552(a)(4)(B), and

    552(a)(6)(c)(i) (2012). This Court also has jurisdiction over this action pursuant to 28

    U.S.C. § 1331 (2013). Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

**Parties**

4.  Plaintiff EPIC is a public interest research organization incorporated as a not-for-profit

    corporation in Washington, D.C. EPIC conducts oversight of government activities and

    policies and analyzes their impact on civil liberties and privacy interests. Among its other

    activities, EPIC publishes books, reports, and a bi-weekly electronic newsletter. EPIC

    also maintains two popular Internet sites, http://www.epic.org and http://privacy.org/,

    which contain extensive information on current privacy issues, including documents

    obtained from federal agencies under the FOIA. EPIC routinely disseminates information

    to the public through its website and other media outlets. This Court recognized EPIC's

    role as a representative of the news media in *EPIC v. Dep't of Defense*, 241 F. Supp. 2d 5

    (D.D.C. 2003).

5.  Defendant DOD is a federal agency within the meaning of 5 U.S.C. § 552(f)(1). DOD,

    headquartered in Washington, D.C., administers the FVAP.

**FACTS**

6.  Computer scientists have long expressed concern about the reliability, security, and

    integrity of online voting. E-voting "not only entails serious security risks, but also

requires voters to relinquish their right to a secret ballot." *See e.g.,* Douglas W. Jones and Barbara Simons, *Broken Ballots: Will Your Vote Count?* 291 (2012).

7.  The FVAP is tasked with ensuring that Service members, their eligible family members and overseas citizens are aware of their right to vote and have the tools and resources to vote from around the world.

8.  In 2010 the FVAP launched the Electronic Voting Support Wizard ("EVSW") program in 17 states. The EVSW program encouraged eligible voters to view their individual ballot electronically, cast votes online, and then print out the ballot and return it by mail.

9.  In 2011 FVAP requested $39 m to study online voting. In the budget request to Congress, DOD wrote "Funds will complete the kiosk-based system testing evaluation of results, and support similar tests on remote PC-based systems."

10. FVAP then launched the Electronic Absentee Systems for Elections ("EASE"), a pilot program to promote online voting.

11. The EASE Request for Proposal stated that the grants were not to be used for ballots in real elections.

12. Many of the systems funded with EASE grants may be enabled to return marked ballots via email or digital fax over the Internet with no additional cost or programming.

13. At a public hearing in 2011, FVAP discussed "FVAP Technical Initiatives and Standards Development Assistance" and announced a program to include "[Voting System Testing Laboratory] Testing for Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA") Systems," and "Penetration Testing."

14. Later in 2011, the FVAP deputy director stated publicly "We also did voting system test laboratory testing against the UOCAVA pilot program testing requirements to give us an

assessment moving forward and perhaps provide some additional context as to where we are when it comes to security and overall usability of these systems as we move forward with standards to support the electronic voting demonstration project. And then lastly of the completed objectives so far we also did penetration testing on those same systems, the electronic voting support Wizard as well as those systems that originally are (unintelligible) for Internet voting."

15. When asked if the tests of the online voting systems that the FVAP were funding would be made public, the FVAP deputy director responded, "Not publicly available as of yet but it will be publicly available."

16. On August 13, 2012, California Secretary of State Bowen wrote to FVAP and requested the results of its tests of the FVAP online ballot marking systems. Secretary Bowen wrote, "California and the state's military and overseas voters that may use such a system would benefit from being able to examine the results of any testing of ballot marking wizards arranged, paid for, or conducted by FVAP."

17. On September 25th 2012 FVAP responded to Secretary Bowen that "the information and analysis being developed from this research is not yet ready to be released."

18. In a 2012 Congressional Hearing on the FVAP before the House Subcommittee on Military Personnel of the Committee on Armed Services, Representative Susan Davis (D-CA) and Pamela Mitchell, Acting Director of FVAP, discussed the FVAP tests for online ballots and Internet voting systems described above.

19. In Questions Submitted by Members Post Hearing, Representative Susan Davis stated "In 2011, the Federal Voting Assistance Program (FVAP) arranged for the voting system testing laboratories to perform functionality and security testing on both online ballot

marking systems and Internet voting systems. The results of these tests were to be made available to the public but as we rapidly approach the 2012 elections, these reports have yet to be published. These online ballot marking systems will be used in States across the country in the November elections, and election administrators could benefit from the results of these reports."

20. Representative Davis then asked, "What are FVAP's plans for releasing these test reports?"

21. Pamela Mitchell, Acting Director of FVAP, responded to Representative Davis, stating, "These tests are at different stages of ongoing review. The early release of these results without a full vetting of issues and a thorough assessment would lead to incomplete and potentially inaccurate results."

22. The Acting Director of FVAP then stated, "The first of the assessments will be released in December 2012, with all of the assessments being released by the end of the 2nd quarter."

23. The documents referenced by Ms. Mitchell have not ever been publicly released.

24. Voting rights advocates and computer scientists are very interested in the contents of the FVAP report on the reliability of e-voting.

25. Susan Greenhalgh, a leading voting rights advocate, requested the release of the report and documents described above.

26. In the response to the FOIA request by Susan Greenhalgh, the DOD FVAP on April 24, 2012 acknowledged the existence of: (1) FVAP Voting System Testing Laboratory Functionality and Security Testing, (2) VSTL [Voting System Test Laboratory] Functionality and Security Testing, and the (3) Penetration Testing of Simulated Election.

27. These documents constitute three of the four document requests EPIC subsequently made to the agency.

28. The problems of online voting are well known and widely discussed in the academic community.

29. In 2006, Members of the National Academy of Science reviewing systems for e-voting identified risks of "widespread failure" and urged the "availability of backup mechanisms and procedures for use in the event of any failure of e-voting equipment or related technology." The National Academies, *Letter Report on Electronic Voting*, Jul. 20, 2006, http://www.nap.edu/openbook.php?record_id=11704&page=1.

30. More recently, leading computer technologists and security experts from Stanford University, Princeton University, and Johns Hopkins University, among other institutions, have warned that the use of the Internet for "for public elections without assurance that the results are verifiably accurate is an extraordinary and unnecessary risk to democracy." Verified Voting, *Computer Technologists' Statement on Internet Voting*, last accessed Sep. 10, 2014, https://www.verifiedvoting.org/projects/internet-voting-statement/.

31. David Dill, a leading expert in electronic voting systems, has stated that there are "fundamental problems" with voting online, and that "systems tend to be vulnerable." David Talbot, *Why You Can't Vote Online: Fundamental security problems aren't solved, computing experts warn*, MIT Technology Review, Nov. 15, 2012, http://www.technologyreview.com/news/506741/why-you-cant-vote-online/.

32. EPIC, and many of its expert advisors, has long been interested in the privacy and security risks associate with e-voting.

33. EPIC, and many of its expert advisors, believe that it is absolutely critical for the documents sought in this matter be disclosed prior to further deployment of e-voting systems in the United States.

## EPIC's FOIA Request

34. Paragraphs 1-33 above are hereby incorporated by reference as if set forth fully herein.

35. On July 17, 2014, EPIC transmitted, via certified mail, a FOIA request to DOD seeking records regarding the e-voting system testing ("EPIC's FOIA Request").

36. EPIC's FOIA Request was delivered to the agency on July 21, 2014.

37. EPIC asked for the following documents: (1) "FVAP Voting System Testing Laboratory Functionality and Security Testing," (2) "VSTL Functionality and Security Testing," (3) "Penetration Testing of Simulated Election," and (4) All other documents regarding system functionality and security testing of online ballots and Internet voting systems.

38. Documents (1), (2), (3) sought by EPIC were the subject of a previous FOIA request to the agency, made by a different requester. EPIC noted the agency's previously assigned record locator for the three documents to facilitate the agency's processing of EPIC's FOIA Request.

39. EPIC also sought "News Media" fee status as a "representative of the news media" under 5 U.S.C. § 552(4)(A)(ii).

40. EPIC further sought waiver of all duplication fees because disclosure of the records requested will contribute significantly to public understanding of the operation or activities of the government. 5 U.S.C. 552(4)(A).

41. EPIC sought expedited processing because the request was made by "a person primarily engaged in disseminating information…" and it pertains to a matter about which there is

an "urgency to inform the public about an actual or alleged federal government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II) (2013); *Al-Fayed v. CIA*, 254 F.3d 300 (D.C. Cir. 2001). Specifically, EPIC noted, "[f]air voting is a core democratic principle and right. These test results will indicate to the public whether or not government administered systems are secure and produce accurate, fair election results."

42. EPIC stated that "there is a particular urgency for the public to obtain information about the viability and security of online voting systems. As indicated in testimony before the Subcommittee on Military Personnel of the Committee on Armed Services, the FVAP has been promoting the use of online voting equipment and has represented to Congress that these systems have been security tested. Congress members have expressed intense interest in the results of these tests and agency personnel have represented that the results would be available almost two years ago. Moreover, election officials who will be conducting elections in their states this election cycle with this equipment have asked FVAP for the release of these test reports."

43. EPIC received a letter from DOD dated July 31, 2014 in which the agency failed to make any determination regarding EPIC's FOIA Request.

44. The agency failed to address EPIC's request for new media status.

45. The agency failed to address EPIC's request for fee waiver.

46.  The agency also denied EPIC's request for expedited processing.

### EPIC Has Constructively Exhausted Its Administrative Remedies

47. Paragraphs 1-46 above are hereby incorporated by reference as if set forth fully herein.

48. It has been 37 business days since EPIC's FOIA Request was received by DOD.

49. DOD has failed to make a determination regarding EPIC's FOIA Request within the time period prescribed by 5 U.S.C. § 552(a)(6)(A)(ii) and (a)(6)(E)(iii) (2013).

50. DOD's failure to make a determination within the statutory limit violates the FOIA.

51. EPIC has constructively exhausted the administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

## Count I

### Violation of FOIA: Failure to Comply with Statutory Deadlines

52. Paragraphs 1-51 above are hereby incorporated by reference as if set forth fully herein.

53. As described above, Defendant DOD's failure to make a determination regarding EPIC's Request violated the statutory deadline imposed by the FOIA set forth in 5 U.S.C. § 552 (a)(6)(A)(ii) and (a)(6)(E)(iii) (2013).

54. EPIC has constructively exhausted the applicable administrative remedies with respect to EPIC's FOIA Request. 5 U.S.C. § 552(a)(6)(C)(i).

## Count II

### Violation of FOIA: Unlawful Withholding of Agency Records

55. Paragraphs 1-54 above are hereby incorporated by reference as if set forth fully herein.

56. As described above, DOD has failed to comply with statutory deadlines and failed to make responsive records available to EPIC.

57. As a result of DOD's unlawful delay, EPIC and the public have been denied access to agency records to which the parties are lawfully entitled under the FOIA, 5 U.S.C. § 552(a)(3)(A).

58. EPIC has constructively exhausted the applicable administrative remedies with respect to EPIC's FOIA Request. 5 U.S.C. § 552(a)(6)(C)(i).

59. EPIC is entitled to injunctive relief compelling the prompt disclosure of the requested agency records.

## Count III

### Violation of FOIA: Failure to Make a Determination as to the Fee Status Request

60. Paragraphs 1-59 above are hereby incorporated by reference as if set forth fully herein.

61. In the EPIC FOIA Request, EPIC set forth a facts and law in support of a determination that it is entitled to Media Fee Status.

62. EPIC has constructively exhausted administrative remedies with respect to the fee status determination. 5 U.S.C. § 552(a)(6)(C)(i).

63. EPIC is entitled to a determination that it is a media requester as the agency failed to comply with the time limit under 5 U.S.C. § 552 (a)(6)(A)(ii) and (a)(6)(E)(iii). 5 U.S.C. § 552(a)(4).

64. EPIC is also entitled to a determination that it is a media requester as a matter of law. *EPIC v. Department of Defense,* 241 F. Supp. 2d 5 (D.D.C. 2003).

## Count IV

### Violation of FOIA: Failure to Make a Determination as to Fee Waiver Status Request

65. Paragraphs 1-64 above are hereby incorporated by reference as if set forth fully herein.

66. In the EPIC FOIA Request, EPIC set forth facts and law in support of a fee waiver.

67. The agency failed to make a determination on EPIC's fee waiver request.

68. EPIC has constructively exhausted remedies with respect to a fee waiver determination. 5 U.S.C. § 552(a)(6)(C)(i).

69. EPIC is entitled to injunctive relief providing for a fee waiver in this matter as a consequence of the agency's failure to make a determination on the fee waiver request.

70. EPIC is also entitled to a fee waiver in this matter as the agency failed to comply with the time limit under 5 U.S.C. § 552 (a)(6)(A)(ii) and (a)(6)(E)(iii). 5 U.S.C. § 552(a)(4)(A)(viii).

## Requested Relief

WHEREFORE, Plaintiff prays that this Court:

A. Order Defendant to conduct a reasonable search for all responsive records;

B. Order Defendant to promptly disclose to EPIC responsive records;

C. Order Defendant to grant EPIC media status;

D. Order Defendant to grant EPIC a fee waiver;

E. Award Plaintiff its costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E) (2010); and

F. Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

Marc Rotenberg, D.C. Bar # 422825
EPIC President

By: */s/ Ginger McCall*
Ginger McCall, D.C. Bar # 1001104
Julia Horwitz, D.C.  Bar # 1018561
ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
 (202) 483-1140 (telephone)
(202) 483-1248 (facsimile)